# CASES

DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS
### DURING THE YEAR 1911.

---

## Mary L. Baker, Administratrix, Appellee, v. Illinois Central Railroad Company, Appellant.

1. PERSONAL INJURIES—*obligation of care to licensee upon railroad track.* A person who is upon a railroad track in the mutual interest of the railroad company owning the same and another company, is a licensee by assent and request to whom the owner of such track owes the duty to exercise reasonable diligence.

2. PERSONAL INJURIES—*when doctrine of assumed risk no defense.* A defendant to whom the person injured sustained no contractual relation cannot rely upon the doctrine of assumed risk. This doctrine is peculiar to the relation of master and servant.

3. TRIAL—*when remarks of court improper.* Remarks of the trial court in ruling upon evidence indicative of an erroneous view of the law are improper and if prejudicial constitute ground for reversal.

4. APPEALS AND ERRORS—*when exercise of discretionary power will not reverse.* It is within the discretion of the trial court to refuse to allow counsel to read from a transcript of the notes of the stenographer, and unless an abuse appears an exercise of such discretionary power will not reverse.

5. EVIDENCE—*when expert testimony competent. Held,* that it was error to refuse to permit duly qualified experts to testify to what extent a switch engine like the one involved in this case,

(521)

not equipped with pony trucks, would ordinarily dip when operated at a speed of six miles an hour over a track similar to that at the crossing in question.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Coles county; the Hon. WILLIAM B. SCHOLFIELD, Judge, presiding. Heard in this court at the May term, 1910. Reversed and remanded. Opinion filed May 26, 1911.

JAMES W. & EDWARD C. CRAIG, for appellant; JOHN G. DRENNAN, of counsel.

BRYAN H. TIVNEN, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

This suit was originally instituted against the Illinois Central Railroad Company and the Vandalia Railroad Company. A trial of the issues by jury resulted in a verdict of guilty as to the former company and of not guilty as to the latter. Judgment for the sum of $8,000 was rendered against the Illinois Central Railroad Company in accordance with the verdict.

The declaration charges, in substance, the operation by the Vandalia Railroad Company in the city of Effingham, of a railroad, switches and "Y" tracks, and of a passing track by the Illinois Central Railroad Company; that the plaintiff's intestate, William A. Baker, was employed by the Vandalia as a yard switchman, and as a member of a switching crew moved and delivered cars for the Vandalia, from its tracks to and upon the passing track of the Illinois Central, by the request and consent of the latter company; that defendants negligently permitted one side of the passing track of the Illinois Central to be and remain out of repair, with a low and sunken joint at and in a rail thereof, and the rails to become separated from the tie there and to be unnecessarily dangerous to Baker in his work aforesaid; that the defendants

knew, or by the exercise of reasonable care ought to have known of the disrepair and danger in time to have made it reasonably safe; that Baker did not know of the disrepair and danger and had no reasonable opportunity to discover it; and that while he was, in the usual line of his duty in that regard, standing upon the front foot-board of the Vandalia switch engine delivering cars ·from the Vandalia to the Illinois Central, upon the passing track of the Illinois Central, and in the exercise of ordinary care for his own safety, without warning or notice to him the switch engine suddenly tipped into the low and sunken place in the said passing track, and thereby with great violence he was thrown to the track and injured, and died from the injuries.

The evidence discloses the following facts: The Illinois Central runs north and south, and the Vandalia east and west, through the city of Effingham. Their joint depot is located on the east side of the Illinois Central and on the north side of the Vandalia. The two railroads are connected with a "Y" starting on the Vandalia at a point west of the junction of the two roads, and connecting with the Illinois Central at a point north of said junction. The Vandalia had its shops and switch-yards at Effingham and there maintained switch engines and crews in charge of the same. It had been the custom of each of the companies to deliver cars received by it, to the other, by means of the "Y" track. There is no proof of any specific agreement between the·companies relative to the delivery of such cars, but in view of the fact that the Vandalia maintained a switch engine at that point, it had been the practice for the Illinois Central to deliver cars received by it for the Vandalia on the "Y", which cars were then taken by the switch engine of the Vandalia. The Vandalia having a switch engine, not only placed the cars that it received for the Illinois Central, on the "Y", but also delivered them

to the latter company by placing them on the passing track. At the point where the "Y" connected with the Illinois Central tracks, it maintained five tracks, the east one of which was known as the north-bound track, the next to the west the south-bound track, the next the passing track, and then two other tracks. The "Y" connected with the passing track, and from that track the Vandalia switch engine, in delivering cars, could enter the house track at either the north or south end. The passing track was used merely for the passing of freight trains. The north entrance to the house track was north and the south entrance south of Railroad avenue, which ran east and west some distance north of the junction of the two roads.

Plaintiff's intestate, William A. Baker, had for five years prior to his death, been in the employ of the Vandalia as a switch foreman in its yards at Effingham. He had charge of the switch engine used in the making up of trains in the Vandalia yards, and in delivering cars from the Vandalia to the Illinois Central, the crew of which were under his direction. The switch engine in use on March 9, 1909, had three pairs of drive-wheels, but there were no small wheels in front of the drivers. At the back and front of the engine were foot-boards, ten inches in width, used by the crew in getting off and on the engines. That on the front did not run clear across, because of the coupling device, but continued on either side thereof. The clear space between the top of the rail and the bottom of the front foot-board was one and seven-eighths inches. East of the coupling device the front foot-board slanted downward so that the front thereof was at least an inch lower than the back.

During the afternoon of March 9, 1909, Baker and the crew, of which he was foreman, started to deliver a mail car and a refrigerator car which were on the "Y" to the Illinois Central, using the switch engine referred to. The engine was headed to the north when it reached the Illinois Central tracks, with the

cars in the rear. Baker stood on the east front board and another switchman on the west front board. While the engine was running at about six miles an hour the front foot-board struck the crossing at Railroad avenue. Baker was thrown from the foot-board, caught under the same, and dragged for some distance. The evidence shows that the foot-board upon which he was standing was at the time bent under so that it was at an angle of forty-five degrees pointing south. The evidence further shows that on that morning Baker had complained to the foreman of the Vandalia shop that the foot-board in question was too low, and stated that some one was going to get hurt on it, and that he had told others prior thereto that it had scraped at the crossing in question, and that on one occasion he "come very near getting throwed off" at such crossing; that immediately after the accident, while he was lying on the ground he told several members of his crew that he "knew this very thing would happen;" that the lowness of the foot-board was the cause of his injury, and "that it happened just as he expected it to happen and that he was the one who had to suffer."

The evidence further shows that immediately south of the crossing in question, one of the ties was lower than the other, and that engines in passing over such tie depressed it at the point where the rails met, thereby creating what was known as a low joint. The defendant offered to show on the trial that the front foot-board in question was too low; that the standard height was not less than seven and a half inches above the rail; that it was unsafe to have the foot-board any lower; that the height adopted by the Vandalia railroad was the standard height; that other switch engines on the Vandalia had foot-boards from eight and a half to ten and a half inches high, and that the foot-boards on the switch engines of the defendant were from eight to ten inches high; and to further show

that foot-boards upon engines used by well-conducted, first-class railroad companies were not lower than seven and a half inches. The court refused to admit such evidence, and in ruling upon the same made the following statement in the presence of the jury: "The Illinois Central and Vandalia use this track together. No Illinois Central switch engine there. This accident was caused by the Vandalia engine, and how the height of the Illinois Central switch engine comes in I don't know. If they permit the Vandalia to use their track they have got to keep their track in such condition as to use this engine and the objection will be sustained." The court also refused to permit the defendant to prove that the passing track at the point where there was a low joint would have been safe for a switch engine with a foot-board at the proper height. On the argument of the case the court refused to allow one of the attorneys for the defendant to read from a transcript of the notes made by the court reporter, the testimony of witnesses as to what Baker had said relative to the foot-board.

It is first contended by the appellant that the declaration failed to charge facts from which a duty on the part of the appellant to protect the deceased from the injury complained of would arise, or a failure on the part of the appellant to perform such duty, or of an injury to the plaintiff resulting from such failure. Such position is predicated upon the theory that inasmuch as the relation of master and servant did not exist between the deceased and the appellant company, Baker was but a licensee upon the track so far as appellant is concerned. We think the facts stated in the declaration constituted a good cause of action against the appellant, and if established by the greater weight of the evidence, warranted a recovery thereunder. Under the relations created by the arrangement between the respective railroad companies, Baker became, at least, a licensee by assent and request. His

presence upon the track was in the mutual interest of both companies. It became the duty of the Illinois Central to exercise reasonable diligence to keep its tracks in a reasonably safe condition for the operation of switch engines of the usual construction and in a reasonable state of repair and when properly handled. There is evidence tending to show that said company failed to fulfill such duty by permitting the presence of the so-called "low joint" and that such defect in the track contributed, at least, to the injuries received by Baker. The issues of fact involved were therefore properly submitted to the jury.

It is contended that under the facts and circumstances shown by the evidence, the jury were unwarranted in finding that Baker was in the exercise of due care, for the reason that he knew of the condition of the foot-board and the danger incident to riding thereon. We are not prepared to hold as a matter of law, that the deceased was guilty of contributory negligence, and the question was properly submitted to the jury. The defense that Baker assumed the risk of injury by virtue of his employment, or by continuing in such employment with knowledge of the defect and danger, while proper to be invoked by the Vandalia, is unwarranted so far as a right of recovery against the Illinois Central Railroad is concerned, for the reason that no contractual relations existed between him and the Illinois Central. Shoninger v. Mann, 219 Ill. 242; Conrad v. Ry. Co., 240 Ill. 12. The facts and circumstances tending to show knowledge on the part of the deceased, of the defect and danger of the track, were, however, proper to be considered by the jury as bearing upon the question of contributory negligence.

The court erred in refusing to permit appellant to show the height of foot-boards used by engines by well conducted first class railroads. While the term "well regulated and prudently managed railroads" would have been the more apt expression, the

two are substantially the same. Ry. Co. v. Walker, 127 Ill. App. 212. The court also erred in making the remarks hereinbefore set forth, in the presence and hearing of the jury. As has been stated, it is not the law that if appellant permitted the Vandalia to use its track, it was its duty to keep the same in such condition that any locomotive that the Vandalia might choose to use could be operated thereon with reasonable safety. The remarks in question tended to mislead the jury, and were doubtless prejudicial to appellant. The court did not err in permitting the plaintiff to introduce evidence as to the condition of the tie beneath the so-called "low joint." While a substantive right of recovery could not be based upon the condition of such tie, evidence thereof was competent as a part of the *res gestae.*

The court did not err in refusing to permit counsel for appellant, after stating that he proposed to read from a transcript of the notes of the stenographer, to do so. The matter rested in the sound discretion of the trial judge, and we do not think such discretion was improperly exercised. McConkie v. Babcock, 101 Iowa 126.

While we do not fully approve of all the instructions given at the instance of the plaintiff, we find no serious error in them. The effect of the twenty-second instruction offered by appellant would have been to correct in the minds of the jury any erroneous impression of the law induced by the remarks of the court above referred to. The instruction correctly stated the law, and its refusal was error. The court did not err in refusing to permit experts to testify whether or not the operation of the engine over the defective track was safe or otherwise, but did err in refusing to permit appellant to prove to what extent a switch engine like the one involved, not equipped with pony trucks, would ordinarily dip when operated at a speed of six miles an hour over a track similar to that at the crossing in question. The subject-

matter of inquiry was one upon which inexperienced persons were not likely to be capable of forming a correct judgment without assistance. The opinions of witnesses shown to be by actual experience and long observation, skilled in the railroad business, were therefore competent.

The evidence clearly warrants a finding that the defendant's track was defective and that it was negligent in that regard, but it is so close upon other of the issues involved, that we are constrained to hold that the errors indicated demand a reversal of the judgment and the remandment of the cause for another trial. One-half the cost of additional abstract will be taxed to appellant.

*Reversed and remanded.*